IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CAROLYN A. SMITH,

    Plaintiff,                      No. CIV S-10-1985 EFB

    vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.                 ORDER
_____/

       Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act. For the reasons discussed below, the court grants plaintiff's motion for summary judgment and denies defendant's motion for summary judgment, and remands the case for further proceedings.

I. BACKGROUND

       Plaintiff formally applied for DIB and SSI on September 27, 2006. Administrative Record ("AR") 23. Her application alleged that she had been disabled since October 1, 2004. *Id*. Her application was denied initially and upon reconsideration, and plaintiff requested an administrative hearing. *Id.* On August 12, 2008, a hearing was held before administrative law

1

judge ("ALJ") William C. Thompson. AR 30-80. Plaintiff, who was represented by an attorney, testified at the hearing. *Id*. at 23. Vocational expert (VE) Susan L. Creighton-Clavel also testified at the hearing. *Id.*

The ALJ issued a decision on November 18, 2008, finding that plaintiff was not disabled.[1] *Id.* at 23-29. The ALJ made the following specific findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.
>
> 2. The claimant has not engaged in substantial gainful activity since October 1, 2004, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant had the following severe impairment: fibromyalgia (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).
>
> ...
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.* Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq.* Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. § 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits under both programs. *See* 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 and 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:
> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.
*Lester v. Chater,* 81 F.3d 821, 828, n.5 (9th Cir. 1995).
The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Bowen*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

...

5. After careful consideration of the entire record, I find that the claimant can stand/walk for 6 hours in combination in an 8 hour workday, sit for 6 hours in an 8 hour workday, and have the opportunity to alternative [sic] sitting and standing about every 2 hours. She can occasionally climb stairs or ramps. She can lift and carry 10 pounds frequently and 20 pounds occasionally.

...

6. The claimant is capable of performing past relevant work as a teacher's aide. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

...

7. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2004 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

*Id.* at 25-29.

Plaintiff requested that the Appeals Council review the ALJ's decision. However, on May 25, 2010, the Appeals Council denied review, leaving the ALJ's decision as the "final decision of the Commissioner of Social Security." *Id.* at 1-4.

II. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III. ANALYSIS

Plaintiff contends that the ALJ erred in 1) finding that her only severe impairment was fibromyalgia; 2) rejecting her treating physician's and treating therapist's opinions without a legitimate basis for doing so; 3) failing to credit her testimony and third party statements about the nature and extent of her functional limitations, and 4) failing to credit the VE's testimony in response to hypothetical questions which accurately reflected plaintiff's residual functional capacity.[2]

    A.    <u>The ALJ Did Not Err in Finding That Plaintiff's Only Severe Impairment was Fibromyalgia.</u>

At step two, the ALJ found that plaintiff's only "severe impairment" was fibromyalgia. AR 25. Plaintiff argues that the ALJ should have found that her irritable bowel syndrome, degenerative disc disease, osteoarthritis, bipolar disorder, major depressive disorder, and personality disorder were also severe impairments. Dckt. No. 17 at 21-24.

An impairment or combination of impairments may be found non-severe "only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). Step two is "a de minimis screening device [used] to dispose of groundless claims." *Id.* If "an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the

---

[2] Because the case must be remanded because of error at an earlier step, the court does not reach this last argument.

4

not severe evaluation step." *Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005) (citing SSR No. 85-28).

Here, the ALJ did not commit reversible error in finding that plaintiff's irritable bowel syndrome, degenerative disc disease, osteoarthritis, bipolar disorder, depression, and personality disorder, to the extent that they were medically determinable impairments, were non-severe. Regarding plaintiff's irritable bowel syndrome, the ALJ found that "the diagnosis is based on the claimant's subjective complaints. There are no objective tests to support the diagnosis." AR 25. Plaintiff argues that this was not a legitimate basis for finding that her irritable bowel syndrome was non-severe, as there is no objective test for irritable bowel syndrome. *See* Dckt. No. 17 at 25. Regardless of the merits of this argument, plaintiff has not pointed to medical evidence in the record contradicting the ALJ's finding. Plaintiff cites a number of pages showing that medical professionals diagnosed plaintiff with irritable bowel syndrome, but none of the pages cited contain any assessed limitations or any indications that plaintiff's irritable bowel syndrome has more than a minimal effect on her ability to perform work activity. *See* AR 204, 224, 231, 250, 291.

The ALJ found that plaintiff's depression was non-severe, and found that her "mental impairment does not even result in even minimal limitations." *Id.* at 25-26. Plaintiff disputes this finding by arguing that her therapist, Ms. Shore, diagnosed her with depression, bipolar disorder and personality disorder. Dckt. No. 17 at 22-23. As explained in detail below, Ms. Shore is not an "acceptable medical source" and her opinions cannot, for the purpose of these proceedings, qualify to establish the existence of a medical impairment. *See* 20 C.F.R. § 404.1513(a), (d). Similarly, the lay testimony plaintiff cites regarding her mood swings and depression cannot establish the existence of a medical impairment. *See* Dckt. No. 17 at 23.

////

////

////

The ALJ did not specifically find that plaintiff's degenerative disc disease and osteoarthritis were non-severe impairments.[3] He did write that "there was some mild and moderate disk space narrowing in the cervical spine. Notably the rest of the x-rays were essentially normal." AR 27. Plaintiff fails to point to any medical evidence in the record showing that her mild and moderate disk space narrowing has any more than a minimal effect on her ability to work. Thus, the ALJ's step two finding is supported by substantial evidence.

### B. The ALJ properly weighed the Treating Physician and Marriage and Family Therapist Opinions.

#### 1. Treating Physician

Plaintiff argues that the ALJ erred in rejecting the opinion of her treating doctor, Dr. Stammler. The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1295 (9th Cir. 1996). To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. *Id.* at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion

---

[3] Plaintiff argues that she was "diagnosed" with a positive HLA-B27 antigen. Dckt. No. 17 at 25. But a positive HLA-B27 test is not an impairment; rather, it is a test result that correlates with the presence of some impairments. *See* AR 242 (the "antigen is present in 9 percent of caucasian and 4 percent of black populations. The antigen is seen with a frequency of 90 percent in patients with ankylosing spondylitis and a frequency of 80 percent in patients with Reiter's disease."). Plaintiff does not claim that she has either of these impairments.

(e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

Defendant argues that, despite controlling Ninth Circuit caselaw requiring "clear and convincing" reasons for rejecting the uncontradicted opinion of a treating physician, the ALJ was only required to provide "good reasons that are supported by substantial evidence." Dckt. No. 23 at 10. Defendant argues that because Congress gave the Commissioner of Social Security authority to make rules and regulations setting out the standards for proving disability, "the Ninth Circuit's judicially-created standard . . . would appear to be improper." *Id.* Defendant's argument that this court ignore controlling Ninth Circuit law is obviously unavailing.

Dr. Stammler, plaintiff's treating physician, completed a "physician's report on disability" for CalPERS. AR 201-03. Dr. Stammler wrote that plaintiff had fibromyalgia, and chronic neck and back pain, chronic fatigue, and irritable bowel syndrome. *Id.* at 202. She checked a box indicating that plaintiff was "presently, substantially incapacitated from performance of the usual duties of the position for [her] current employer," and wrote that plaintiff was unable to perform the following "specific work activities": "sitting, standing, trouble focusing due to pain, walking." *Id.* She checked a box indicating that the incapacity was permanent. *Id.* Under the question "What information did you review to make your medical opinion? Check all that apply," Dr. Stammler checked the box "information provided by member." *Id.*

Dr. Stammler's opinions were contradicted by the opinions of two consulting, non-examining state agency physicians, Drs. DeSouza and Smith. Dr. DeSouza opined that plaintiff could lift/ carry 20 pounds occasionally, 10 pounds frequently, and stand/walk/sit about 6 hours

in an 8-hour workday, and would need to rest every two hours for five minutes "for stand/walk." AR 263-66. Dr. Smith opined that plaintiff had no medically determinable impairment. AR 267. Although these doctors disagreed with Dr. Stammler, their opinions were not based on independent clinical findings and therefore do not constitute substantial evidence which would alone justify rejecting Dr. Stammler's opinions. *See Orn*, 495 F.3d at 632. Thus, the ALJ's reasons for rejecting Dr. Stammler's opinions had to be clear and convincing. *See Lester*, 81 F.3d at 831.

The ALJ wrote the following paragraphs about Dr. Stammler:

> The records in this case are not numerous. They show that the claimant was treated by Dr. Stammler, an internal medicine physician, from October 3, 2003 to April 4, 2007. Dr. Stammler saw the claimant for her complaints including diarrhea, back pain, and all over tenderness. She advised conservative treatment. With regard to the claimant's all over tenderness, she reported that the claimant had fibromyalgia. Notably, though, Dr. Stammler did not identify any trigger points as required by the Center for Disease Control when making this diagnosis. She also ordered x-rays of the claimant's back and based on her examination, the claimant's subjective complaints, and the x-ray reports, she stated that she did not feel they were related to the fibromyalgia as there was some mild and moderate disk space narrowing in the cervical spine. Notably the rest of the x-rays were essentially normal. (Exhibits 2F and 8F). Dr. Stammler did not indicate any work related restrictions in her treating records.
>
> ...
>
> I have considered the May 11, 2005 statement from the claimant's physician Dr. Stammler, who stated that the claimant is permanently incapacitated in sitting, standing, focusing due to pain and walking. Dr. Stammler did not provide any documentation to support this opinion but did state that it was based on the claimant's subjective statements. I ha[v]e rejected this opinion for the reasons set out above as well as for the fact that she did not base her opinion on anything but subjective statements. I also note that, contrary to her own statement, Dr. Stammler stated on March 14, 2007 that the claimant had requested a physical assessment or functional evaluations to submit in support of her reapplication for disability but she did not do those assessments. Instead, she only documented the claimant's subjective complaints (Exhibits 1F, 2F, 8F). Finally, Dr. Stammler's statement was administrative and not a medical conclusion.

AR 27-28.

////

////

Thus, the ALJ provided the following reasons for rejecting Dr. Stammler's opinions: 1) she did not identify any trigger points to support the fibromyalgia diagnosis; 2) she did not indicate any work related restrictions in her treating records; 3) her opinion was based on plaintiff's subjective statements; 4) she stated that she did not perform physical assessments or functional evaluations, and refused to perform such an evaluation on plaintiff, despite plaintiff's request; and 4) her statement that plaintiff was permanently incapacitated was administrative and not a medical conclusion.

The court finds that these reasons meet the clear and convincing standard. Plaintiff attempts to discredit each of the ALJ's reasons. Plaintiff argues that Dr. Stammler likely identified trigger points for the fibromyalgia diagnosis in 2002, when she began treating plaintiff. But there is no medical record showing trigger points in the administrative record, and plaintiff's speculation does not render the ALJ's reason unclear or unconvincing. Next, plaintiff argues that "treatment notes generally do not contain work related restrictions" and that there was no reason for Dr. Stammler's notes to contain such restrictions. Dckt. No. 17 at 29. The court agrees with plaintiff that this reason is less convincing than the others, but because the ALJ rejected Dr. Stammler's opinion on multiple bases, any error pertaining to this reason is harmless. Next, plaintiff argues that Dr. Stammler's 2007 statement that she did not do physical assessments reflected a "change in policy" that "did not detract from her statement in 2005." *Id.* But there is no indication in the records that Dr. Stammler changed her policy of not doing physical assessments. Instead, it appears that Dr. Stammler's 2005 opinion regarding plaintiff's functional limitations was not based on a physical assessment, but on plaintiff's own subjective complaints, as Dr. Stammler indicated on the form itself. Although plaintiff may disagree with the ALJ's assessment of the evidence, as explained above, "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954.

////

2. <u>Therapist</u>

Plaintiff also argues that the ALJ erred in rejecting the opinion of her therapist, Ms. Shore. Ms. Shore, who is a marriage and family therapist, completed a mental health medical report in which she opined that plaintiff had a poor ability to interact with supervisors, deal with work stress, function independently, and maintain attention/ concentration, as well as a fair ability to follow work rules, relate to co-workers, deal with the public, and use her judgment. AR 383. The ALJ rejected Ms. Shore's opinion for the following reasons:

> I have also considered the statements by Sydney Shore, a marriage and family therapist, who stated on April 1, 2007 and May 21, 2008, that claimant had poor ability to deal with work stress, to function independently, to maintain attention/ concentration, or the ability to understand, remember and carry out simple job instructions. I have rejected this opinion. This opinion is not from an acceptable medical source. Even considered as "other source" evidence, these limitations are not supported by the medical record or the claimant's presentation at the hearing. These statements are also inconsistent with the assessment by Dr. Daigle on December 15, 2006 (Exhibits 9F and 11F).

*Id.* at 29.

Plaintiff argues that the ALJ had no "legitimate basis" for rejecting Ms. Shore's opinion, because as an "other source," her opinion could be used to show the severity of plaintiff's impairment, and her opinions were consistent with Dr. Stammler's records, plaintiff's testimony, and plaintiff's sister's testimony.

The relevant statute provides:

> (a) Sources who can provide evidence to establish an impairment. We need evidence from acceptable medical sources to establish whether you have a medically determinable impairment(s). See § 404.1508.
> ...
> (d) Other sources. In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include, but are not limited to–
>
> (1) Medical sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists).

20 C.F.R. § 404.1513 ("Medical and other evidence of your impairment(s)"). As a therapist, Ms.

Shore falls under the "other sources" section of the statute. Therefore, evidence from Ms. Shore could be used to show the severity of plaintiff's impairments and how they affected her ability to work. But evidence from Ms. Shore could not *establish* that plaintiff actually had a mental impairment. That evidence must come from an acceptable medical source.

Here, Dr. Daigle, who examined plaintiff, found that she had "no psychiatric diagnosis," that her "[m]ental status examination is essentially within normal limits" and that "[f]rom a psychiatric standpoint, the prognosis is good and absent her physical complaints, I believe she would be employed at this time." AR 259. Thus, the medical evidence from Dr. Daigle, an acceptable medical source, did not establish that plaintiff had a mental impairment. Accordingly, evidence from Ms. Shore could not be used to prove the severity of the impairment, and the ALJ did not err in rejecting Ms. Shore's opinion.

### C. The ALJ Did Not Commit Reversible Error in Finding Plaintiff's Testimony Not Completely Credible.

Plaintiff argues that the ALJ erred in finding that she was not completely credible. Under Ninth Circuit law, an ALJ must engage in a two-step analysis when determining whether a claimant's testimony regarding subjective pain or symptoms is credible:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir.1991) (en banc) (internal quotation marks omitted). The claimant, however, "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir.1996). "Thus, the ALJ may not reject subjective symptom testimony...simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." *Id.*; *see also Reddick*, 157 F.3d at 722 ("[T]he Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.").

////

////

////

Second, if the claimant meets this first test, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281; *see also Robbins*, 466 F.3d at 883 ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each.").

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). To support a lack of credibility finding, the ALJ must "point to specific facts in the record which demonstrate that [the claimant is in less pain or the claimant's symptoms are less severe] than she claims." *Vasquez v. Astrue*, 547 F.3d 1101, 1105 (9th Cir. 2008).

Here, the ALJ wrote:

For the following clear and convincing reasons, I find the claimant's alleged allegations of disabling limitations are not credible to the extent alleged. First, the claimant is not taking the type of pain medication associated with severe disabling pain. Second, the claimant's medical records are sparse and they have significant amounts of information whited out so that the information that is there cannot be seen. This makes her records, as they are now, suspect. Third, records show that the claimant had tender points but there is no identification of trigger points as required by the Center for Disease Control for fibromyalgia. Fourth, the claimant is able to drive and get to appointments on time. Fifth, Dr. Garfinkel, a board eligible internal medicine physician, reported that the claimant can perform light work activity with alternate sitting and standing every 2 hours and occasional climbing, stooping, kneeling or crouching (Exhibit 3F). Sixth, the claimant gets along with her family. Seventh, the claimant takes care of herself without assistance. Eighth, the claimant performs light housekeeping, chores, errands, shopping, a[n]d cooking. She is able to handle her own funds. She likes to read and do crossword puzzles. Ninth, Dr. Daigle stated that the claimant is alert, oriented, has normal speech and normal memory. Dr. Daigle stated that the claimant had a GAF of 70 and no psychiatric diagnosis. He found that the claimant is not significantly limited in her mental work functional abilities (Exhibit 4F). Tenth, the claimant was capable of attending the hearing and participating in her own behalf. Eleventh, the claimant has not been hospitalized or been to the emergency room for any problem. Consequently, the claimant's allegations of disabling limitations are not credible to the extent alleged.

AR 28. Thus, the ALJ gave eleven reasons for discrediting plaintiff's testimony.

Plaintiff argues that the ALJ's reasons are not clear and convincing. Plaintiff argues that she was taking medications and "received the type of treatment one would expect from a person suffering from fibromyalgia." Dckt. No. 17 at 35. But the ALJ's point was that plaintiff was not taking the type of medication associated with *severe*, *disabling* fibromyalgia, rather than an

12

average case of fibromyalgia. Plaintiff argues "that the quantity of one's records is not determinative of disability or credibility," but it is reasonable to expect that a person who has become disabled would have a greater longitudinal treatment history. Plaintiff further argues that the ALJ's reliance on her activities of daily living, ability to care for herself and ability to be on time and participate in her own hearing is not a clear and convincing reason for rejecting her testimony because these activities do not show that she is able to maintain substantial gainful employment. But "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d at 954. Although there may be another reasonable interpretation of the evidence, the ALJ's reasoning is not legally erroneous and is supported by substantial evidence.

Plaintiff also convincingly argues that some of the reasons the ALJ gave for discrediting her testimony are less than clear and convincing. For example, plaintiff notes that the ALJ did not clarify who whited out sections of the medical records, and that the ALJ's assertion that the record showed no identification of trigger points is false, because Dr. Weisner "specifically noted that Ms. Smith exhibited 'definite positive trigger point tenderness' on examination and was positive for Fibromyalgia." Dckt. No. 17 at 36; *see also* AR 230. But because the ALJ gave several legally sufficient reasons for rejecting her testimony, these errors alone do not constitute a basis for reversal; however, because the case must be remanded for further proceedings for the reasons explained below, these errors should be addressed on remand.

> D.   The ALJ Erred in Disregarding Lay Witness Testimony, and the Error was not Harmless.

Plaintiff argues that the ALJ erred in failing to discuss the lay testimony of Ms. Smith's sister, Ms. Maywood, and daughter, Ms. Cromwell. Dckt. No. 17 at 39. Ms. Maywood submitted a letter stating that plaintiff "has trouble, most days, doing basic day-to-day tasks.

////

////

Because of fibromyalgia, there are days she is in so much pain that she has trouble walking, moving, even getting out of bed." AR 183. She writes, "her mental sharpness seems to be failing too." *Id.* at 184.

Ms. Cromwell wrote, "Slowly over the last decade it's like a gray cloud has moved over [plaintiff's] house. She used to be able to work on the yard all day and tend to garden projects, now it's overgrown with ferns and the fences are falling down. She can do small short chores like laundry and dishes but the rest of the house is cluttered and dusty, so much that she won't allow me to bring anyone to the house . . . I used to give my mom big hugs and now I have to be brief and super gentle or it hurts her." *Id.* at 185. Regarding plaintiff's mental impairments, Ms. Cromwell wrote, "When she's having an 'episode' her eyes change, they look empty and wild at the same time. You just want to get away because you don't know what's going to happen; is she going to be angry because she's frustrated about something she can't do anymore or is she going to start crying because there's no hope she'll ever get better....if she's having a good day we can hang out for a few hours but it not maybe I'll see her for a half hour because she's lying in bed in pain." AR 185.

Although plaintiff does not mention it, there is a third lay witness statement in the record, submitted by plaintiff's mother, Ms. Petersen. *Id.* at 182. Ms. Petersen writes, "Carolyn so enjoyed her work . . . She wanted so much to be able to continue. Having such debilitating health problems made this impossible. The pain of fibromyalgia makes it some days impossible to even do simple household tasks. The chronic and erratic path of fibromyalgia makes it so difficult to get to necessary appointments." *Id.*

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006); *see also* 20 C.F.R. §§ 404.1513(d)(4), (e). Such testimony is competent evidence and " cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Harmless error analysis applies when an ALJ disregards a lay witness's testimony

14

without comment. *Stout*, 454 F.3d at 1056 (9th Cir.2006) ("[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.").

Here, if the three lay witnesses' testimony were fully credited, the evidence would establish that plaintiff had days where she had trouble walking, moving, and even getting out of bed; that she had mental "episodes" where other people found it difficult to be around her; that on a day that was not a "good day" she could only visit with her daughter for half an hour because she had to be lying in bed due to pain; and that, on some days, her pain makes it impossible for her to perform simple household tasks or get to necessary appointments. This court cannot be confident that no reasonable ALJ, when crediting all of this evidence, would find that plaintiff was disabled. Accordingly, this case must be remanded for consideration of the lay witness statements. As there is no indication in the ALJ's opinion that he was even aware of the lay witness statements, after he evaluates them he may or may not change his opinion regarding the weight afforded to the medical opinions and plaintiff's own credibility. As the ALJ specifically noted in opinion that "the records in this case are not numerous," he may wish to further develop the medical evidence on remand. Nothing in this opinion should be taken as a limitation on the ALJ's ability to reevaluate all of the evidence and make new, different findings on remand.

## IV. CONCLUSION

Because the ALJ disregarded lay witness testimony and the error is not harmless, this case must be remanded for further proceedings. Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is granted;

2. The Commissioner's cross-motion for summary judgment is denied;

3. The case is remanded for further proceedings in accordance with this opinion; and

////

4. The Clerk is directed to enter judgment in plaintiff's favor and close the case.

DATED: March 30, 2012.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE